**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 24, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LARRY ALLEN THOMPSON,

  Petitiner–Appellant,

v.

KEVIN MILYARD, Warden, Sterling
Correctional Facility; JOHN SUTHERS,
Attorney General of the State of
Colorado,

  Respondents–Appellees.

No. 11-1319
(D.C. No. 1:10-CV-00571-MSK)
(D. Colo.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **LUCERO**, **ANDERSON**, and **GORSUCH**, Circuit Judges.

---

  Larry Allen Thompson, a state prisoner appearing pro se, seeks a certificate of

appealability ("COA") to appeal the district court's denial of his 28 U.S.C. § 2254 habeas

petition. We deny a COA and dismiss the appeal.

---

  [*] This order is not binding precedent except under the doctrines of law of the case,
res judicata, and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

In 1991, the body of Ronald Johnson, a known drug dealer, was discovered in a Denver alleyway. The victim had been stabbed forty times. Although stories of the murder ran in local newspapers, no arrests were made.

Following a domestic dispute in 1993, Thompson's then-wife reported to police that her husband told her he had killed a man in Denver. The details of the crime to which Thompson allegedly confessed roughly matched the details of the Johnson murder. Police subsequently arrested Thompson and charged him with first degree murder.

At trial, the prosecution relied on the testimony of Thompson's wife, as well as several other witnesses who testified that Thompson had mentioned the murder to them. Thompson admitted that he knew the victim and additional testimony connected Thompson and the victim on the day of the murder. Evidence also revealed that, the day after the murder, Thompson went to a hospital seeking treatment for lacerations on his wrist that he had sustained the night before.

Both parties also introduced expert testimony concerning a blood stain found on the floor carpets of the van Thompson had allegedly used to move the body. The blood stain was discovered only after Thompson's arrest more than two years after the murder, and Thompson claimed the blood came from a friend, Lane Barnett, who had cut himself in an unrelated accident. An expert for the state testified that the blood from the stain had genetic characteristics present in only four percent of the African-American population.

The expert further concluded that the victim, who was African-American, fell within that four percent. To respond to this evidence, the defense called a different DNA expert to bolster its claim that the blood came from Barnett, who was also African-American. According to the expert, the blood from the stain could only have come from eighteen percent of the African-American population, and both the victim and Barnett fell within that subset.

The jury convicted Thompson of first degree murder and sentenced him to life in prison. His conviction was affirmed on direct appeal. In state post-conviction proceedings, however, Thompson saw some success; he argued that his trial counsel had been ineffective and the Colorado Court of Appeals appointed Thompson new counsel and ordered an evidentiary hearing.

Thompson's new counsel requested additional DNA tests in 1999 which, due to advances in testing methods, definitively proved that the victim was not the source of the blood discovered in the van. Thompson then moved for a new trial based on the new evidence and for post-conviction relief based on ineffective assistance of counsel. The trial court denied both motions, finding that a reasonable jury would probably conclude Thompson was guilty even without the DNA evidence offered at trial. In an unpublished opinion, the Colorado Court of Appeals affirmed. People v. Thompson, No. 06CA2270 (Colo. Ct. App. Sept. 10, 2009) (unpublished).

In 2010, Thompson filed a § 2254 habeas petition in federal district court

claiming ineffective assistance of counsel and violations of his Sixth and Fourteenth Amendment rights. Thompson argued that the jury had convicted him based on "false evidence." The district court denied relief.

## II

We will grant a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Thompson must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quotation omitted). We liberally construe Thompson's pro se filings. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Because the Colorado courts have adjudicated the merits of Thompson's claims, he is not entitled to relief unless he can demonstrate that the state court's resolution of his claims was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under this highly deferential standard, we owe state-court decisions the benefit of the doubt. Woodford v. Visciotti, 537 U.S. 19, 24 (2002).

## A

We read Thompson's filings to allege three constitutional violations at his trial. First, he argues that he is entitled to a new trial based on the DNA evidence uncovered during state post-conviction proceedings. Claims of innocence based on newly discovered evidence are not grounds for federal habeas relief absent an independent constitutional violation in the underlying state proceeding. Herrera v. Collins, 506 U.S. 390, 400 (1993). Thompson claims that the underlying constitutional violation at his trial was the prosecution's presentation of "false" evidence—namely, the testimony that identified the victim as the probable source of the blood stain. See Giglio v. United States, 405 U.S. 150 (1972) (holding that prosecutor's knowing presentation of false evidence violates due process). Yet Thompson has not shown that the prosecution presented false evidence at his trial. The prosecution's expert only testified that the blood sample from the van shared characteristics with the victim that only four percent of the African-American population possessed—a factual statement that Thompson does not contest. The expert never testified that the blood on the van's carpet belonged to the victim. As the district court noted, the DNA evidence presented at trial was not false but simply "not as precise as the DNA evidence obtained post-conviction."

Singling out one line in the summation, Thompson argues that the prosecutor told the jury, in reference to the blood stain, that "the red stuff came from the victim." But an examination of the context of that statement reveals it to be much less egregious than Thompson would have us believe. Before making the statement in question, the

prosecutor described the DNA testing, telling the jury that "the DNA evidence gets us to 96 percent." After twice repeating that number, he continued:

> One of the stipulations we had was that the chain of custody and material tested by our expert was – the red stuff came from the victim, from the carpet. One of the things they stipulated to, they did test the blood. Those were some of the stipulations we had. That's why you have that instruction. There's no dispute about that evidence. You're stuck with 96 percent.

It appears the prosecutor meant to say "the blood came from the carpet," so as to reassure the jury that the sample had not been tainted, but misspoke. Reading the statement in context, no rational person would interpret the prosecutor's statement—with his emphasis of the 96 percent figure before and after—as a definitive declaration that the blood came from the victim. Any error caused by the prosecutor's misstatement was undoubtedly immaterial. See United States v. Langston, 970 F.2d 692, 700 (10th Cir. 1992) (presentation of false evidence must be material to violate due process). Thus, the Colorado courts did not act unreasonably in denying Thompson's request for a new trial.

Thompson also argues that the evidence presented at trial was constitutionally insufficient to support his conviction. This claim is also meritless. Several witnesses testified that Thompson had told them that he murdered a man in Denver. The jury also heard evidence that Thompson had interacted with the victim on the day of the murder. Moreover, the day after the murder, Thompson went to a hospital with lacerations on his wrist—injuries consistent with knife wounds—that he reported sustaining the night before. This abundant evidence was enough for a rational trier of fact to have convicted

Thompson regardless of the DNA evidence.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979) (evidence is not constitutionally insufficient if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

We next turn to Thompson's claim that his trial counsel was constitutionally deficient.  To establish ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), Thompson must show both that his counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. Id. at 687-88, 694.  Because the Colorado Court of Appeals addressed the merits of Thompson's ineffective assistance of counsel claims at length, he must show that there is no reasonable argument that his trial counsel "satisfied Strickland's deferential standard." Harrington v. Richter, 131 S. Ct. 770, 788 (2011).

Thompson argues that his counsel was deficient by not ordering additional DNA testing that might have conclusively proved the victim was not the source of the blood stain.  We need not address this argument, however, because the Colorado court, pointing to the prosecution's scant reliance on the DNA evidence and the plethora of other evidence, reasonably determined that Thompson was not prejudiced by any alleged deficiency of trial counsel.  See Thompson, No. 06CA2270, slip op. at 13-15.  Thompson has not shown that the state court unreasonably applied Strickland.

Finally, Thompson's argument that the district court erred in relying on the factual record compiled by the Colorado state courts is also without merit.  The district court was

required to rely on the factual findings of the state courts.  See Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").  Relatedly, Thompson argues that the district court should have held an evidentiary hearing to develop the factual bases of his claims.  However, Thompson did not request an evidentiary hearing from the district court or even allude to any additional factual findings that would aid his case.  He cannot now allege error in the district court's refusal to grant a hearing he never requested.

## IV

Because Thompson has not shown that his petition's merits are debatable, we **DENY** a COA and **DISMISS** the appeal.  We **GRANT** Thompson's motion to proceed in forma pauperis.

Entered for the Court


Carlos F. Lucero
Circuit Judge